**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

**HUNTER MILLER;**

     Plaintiff;

v.

**COLORADO DEPARTMENT OF HUMAN SERVICES, DIVISION OF YOUTH SERVICES;**

**BETTY K. MARLER YOUTH SERVICES CENTER;**

**TAYLOR LEMUZ;** individually and in her official capacity as Director of the Marler Youth Services Center,

**PAIGE PENNINGTON;** individually and in her official capacity as Behavioral Health Supervisor at the Marler Youth Services Center.

     Defendants.

---

## COMPLAINT WITH JURY DEMAND

---

     Plaintiff Hunter Miller ("Mr. Miller" or "Plaintiff") hereby respectfully files this action against Defendants Colorado Department of Human Services, Youth Services Division, Betty K. Marler Youth Services Center, Taylor Lemuz, and Paige Pennington through the undersigned counsel of record Kishinevsky & Raykin, Attorneys at Law, and state on information and belief as follows. This action seeks equitable relief and appropriate damages and costs.

### I.     JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Federal question jurisdiction arises under the Constitution and laws of the United States of America.

2. At all relevant times, Plaintiff was a resident of Colorado and resided within the Marler Youth Services Center in Jefferson County, Colorado.

3. Each of the Defendants likewise, at all relevant times, was a resident of Colorado, with all acts alleged herein occurring at the Marler Youth Center in Jefferson County, Colorado.

4. Both Defendants Taylor Lemuz and Paige Pennington were employees of the Division of Youth Services at the Marler Youth Center, at all times relevant to this litigation.

5. All wrongful acts alleged by Plaintiff occurred in whole or in part in Jefferson County, Colorado.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## II.     FACTUAL BACKGROUND

7. At all times relevant to this litigation, Plaintiff, Mr. Miller, was a minor detained at the Marler Youth Center, Mount View campus (herein "Mount View").

8. Mount View is a secure male committed center for juvenile males adjudicated delinquent.

9. Mount View is operated by the Colorado Department of Human Services, Division of Youth Services (herein "DYS" or "Defendant DYS").

10. At all times relevant to this litigation, Taylor Lemuz (herein "Ms. Lemus" or "Defendant Lemuz") was the Director and chief executive officer in charge of operating Mount View.

11. Defendant Mount View is a facility operated on behalf of Defendant DYS.

12. At all times relevant to this litigation, Paige Pennington (herein "Ms. Pennington" or "Defendant Pennington") was the Behavioral Health Supervisor at Mount View.

## III.     FACTUAL ALLEGATIONS

13. On or about January 1, 2021, Mount View accepted Mr. Miller as a detained juvenile.

14. Prior to January 1, 2021, Mr. Miller was adjudicated delinquent and sentenced to confinement under the authority of Defendant DYS.

15. Defendant DYS assigned Mr. Miller to serve his confinement at Defendant Mount View.

16. On or about January 1, 2021, Mount View conducted a thorough assessment of Mr. Miller's needs and conditions.

17. Specifically, Mount View gained actual knowledge that Mr. Miller suffered from multiple mental health issues, including addiction, anxiety, depression, and chronic post-traumatic stress disorder ("CPTSD").

18. Mr. Miller resided at Mount View from January 2021 through, at least, November 2022. During this time, Mr. Miller met regularly with Mount View employees including educators, security officers, and behavioral health officials.

19. Specifically, Mr. Miller repeatedly met with Defendant Pennington in individual mental health sessions from February 2021 through November 2022.

20. During these sessions, Mr. Miller spoke openly and honestly about ongoing suicidal ideation.

21. In approximately late August to September 2022, Mr. Miller's suicidal ideation grew significantly worse. At that time, he developed a plan and the specific intent to kill himself.

22. On or about September 1, 2022, Mr. Miller and Defendant Pennington conducted a mental health session. During this session, Mr. Miller directly informed Defendant Pennington of the escalation in his suicidal ideation, his intent, and his plan to kill himself.

23. In response, Defendant Pennington offered Mr. Miller a "Columbia."

24. A "Columbia" is paperwork conducted by Mount View to document suicidal and/or homicidal ideation.

25. As a resident of Mount View for more than one year, Mr. Miller had previous experience with Columbias, which functioned, essentially, as a form of suicide watch.

26. Mr. Miller's previous experiences with Columbias involved restrictions in privileges and clothing. Rather than his ordinary clothes, while on suicide watch, Mr. Miller was required to wear a special, green, smock.

27. Moreover, while not only restricting his privileges, the green smock also identified an individual as a suicide risk to other Mount View residents. When Mr. Miller had previously been on suicide watch, the green smock had been used by other individuals detained at Mount View as a reason to target him for bullying, harassment, and violence.

28. When Defendant Pennington offered Mr. Miller a Columbia on or about September 1, 2022, he declined based on these experiences.

29. After Mr. Miller declined the Columbia, Defendant Pennington took no further action. Defendant Pennington specifically took no action despite actual knowledge that Mr. Miller was not only suicidal but had developed a plan and specific intent to kill himself.

30. Importantly, Mr. Miller was a minor, in the care of Mount View, and specifically reported his suicidal ideation to Defendant Pennington, an adult, senior employee at Mount View.

31. At that time, Mr. Miller was on a series of medications to control his anxiety, depression, and CPTSD. Between September 1, and 15, 2022, Mr. Miller ceased taking any of his medications.

32. Mount View administered medication on a daily basis. When Mr. Miller stopped taking his medication, he simply began collecting the unconsumed pills in his cell.

33. Despite the clear danger associated with overdosing from medication consumption, Mount View took no action to ensure that Mr. Miller ingested his medication. Mount View also took no action to inspect Mr. Miller's cell for contraband such as stockpiled medication.

34. Mount View's failures allowed Mr. Miller to store a lethal amount of medication in his cell.

35. During this time, Mr. Miller's assigned work duties included access to Mount View's kitchens. From at least September 15, 2022, Mount View provided Mr. Miller with unrestricted and unsupervised access to the kitchens, and particularly to the "baking closet."

36. The baking closet contained multiple products for use in cooking and cleaning, including over two liters of almond extract.

37. Common almond extract is approximately 32% alcohol. The extract at Mount View at least equaled this percentage.

38. While consistently unsupervised, Mr. Miller collected the almond extract in two water bottles provided by Mount View.

39. Again, Mount View failed to take any measures to inspect the baking closet, Mr. Miller's cell, or Mr. Miller's person, to check for contraband or to ensure his safety.

40. On or about September 15, 2022, Mr. Miller gathered the stockpiled medication and almond extract in his cell. While, again, unsupervised, Mr. Miller consumed *all* the medication and alcohol.

41. At that point, Mr. Miller had been sober for two years. The sheer amount of alcohol and medication immediately rendered Mr. Miller severely and dangerously intoxicated. Mr. Miller began slurring his words and could not hold himself upright.

42. Several other juveniles in adjacent cells observed his condition. Mount View agents were also present within Mr. Miller's residential area. No Mount View agent or employee checked on Mr. Miller, or otherwise intervened.

43. Fortunately, and coincidentally, Mr. Miller's family had scheduled a video call that evening. At approximately 9:00 pm, Mr. Miller received the call in his cell. Mr. Miller accepted the call via a laptop provided by Mount View personnel.

44. To provide the laptop, Mount View personnel necessarily had to personally travel to, unlock, and enter Mr. Miller's cell. However, *again*, no Mount View personnel took any action upon observing Mr. Miller's obvious intoxication.

45. When Mr. Miller accepted the call, his family immediately identified his intoxicated state. However, before they could conduct any conversation, Mr. Miller lost consciousness and collapsed in his cell.

46. Mr. Miller began vomiting while unconscious, with only his family on a video chat to intervene.

47. Mr. Miller's family immediately contacted Mount View. However, Mr. Miller's family could not either get through to any Mount View employees, nor did any employees respond to their calls.

48. In desperation, Mr. Miller's family notified the Jefferson County Fire Department, which responded to Mount View.

49. When the emergency medical response reached Mount View, initially they were denied entry and Mount View denied any medical emergencies. Only after conversing with the medical technicians, who were able to verify that Mr. Miller's family *personally* observed him collapse on a video call, did Mount View take any action.

50. However, even at that point, Mount View took no action specifically to assist Mr. Miller. Instead, Mount View casually checked its records to review which juveniles had participated in video calls. Eventually Mount View identified Mr. Miller as one such recipient.

51. Only then did Mount View permit the paramedics to enter Mount View and respond to Mr. Miller's cell. At that point he had already spent at least 45 minutes unconscious, laying in his own vomit.

52. Fortunately, the paramedics were able to evacuate and revive Mr. Miller.

53. However, Mr. Miller's experience significantly affected his mental and emotional health, exacerbating his CPTSD, anxiety, and depression, and causing him extreme pain and suffering.

54. On October 1, 2022, Defendant Lemuz emailed Mr. Miller's parents regarding his suicide attempt. In the email, Defendant Lemuz stated:

> "So far, the [Mount View] Administration has identified many, many breakdowns that led to this serious incident. The issues were widespread ranging from our dining services to the staff working the pod to the staff in charge of monitoring the visit. After video review, I have placed certain staff on a modified staffing plan as part of a personnel action. Social services has been contacted and a report for alleged abuse has been filed."

55. Since the incident, Mr. Miller continues to suffer from exacerbated CPTSD, anxiety, and depression, in addition to the physical suffering he endured throughout the attempt and during treatment throughout the days thereafter.

## IV.    LEGAL OVERVIEW

56. A juvenile detention center has a duty to keep its detainees safe. *See*, *e.g.*, *Blackmon v. Sutton*, 734 F.3d 1237, 1240 (10th Cir. 2013).

57. Pursuant to Tenth Circuit precedent, "juvenile delinquency is 'an adjudication of status--not a criminal conviction.'" *Colo. Judicial Dep't v. Sweeney (In re Sweeney),* 492 F.3d 1189, 1191 (10th Cir. 2007) (quoting *United States v. Brian N.*, 900 F.2d 218, 220 (10th Cir. 1990)). Accordingly, juvenile detention centers violate their duty to protect juveniles where the facility or its agents act with deliberate indifference to a known medical need. *Blackmon*, 734 F.3d at 1244.

58. Within the Tenth Circuit, to establish a constitutional claim for deliberate indifference, a detainee must establish that the medical need was "'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ibid.* (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). The detainee must also show that "the defendant-official must 'know[] of and disregard[] an excessive risk to inmate health or safety.'" *Ibid.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

59. These two burdens are the objective and subjective elements of the claim. The Tenth Circuit applies both elements. *Ibid.; see also Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020).

60. Recently, other Circuit Courts have challenged the Tenth Circuit's use of both an objective and subjective element based on the Supreme Court's opinion in *Kingsley*. *Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015); *see Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023) ("*Kingsley* repudiates a subjective requirement for pretrial detainees' Fourteenth Amendment claims and permits pretrial detainees to state Fourteenth

Amendment claims for deliberate indifference to a serious risk of harm on the purely objective basis . . ."); *see also Darnell v. Pineiro*, 849 F.3d 17, 34-35 (2d Cir. 2017); *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. County of Orange*, 888 F.3d 1118, 1124-26 (9th Cir. 2018); *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021)

61. The Tenth, Fifth, Eighth, and Eleventh Circuits continue to employ both a subjective and objective element. *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020); *Cope v. Cogdill*, 3 F4th 198, 207 & n.7 (5th Cir. 2021); *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4) (8th Cir. 2018); *Dang by & through Dang v. Sheriff Seminole Cnty.*, 871 F.3d 1272, 1279 n.9 (11th Cir. 2017)). While these Circuits continue to employ the subjective element, most have done so "with minimal analysis." *Brawner,* 14 F.4th 585, 593 (6th Cir. 2021).

62. As applied by the Sixth Circuit, *Kingsley* requires a detainee to prove "something akin to reckless disregard," to establish a deliberate indifference claim. *Id.*, at 593 (quoting *Castro v. Cnty. of L.A.,* 833 F.3d 1060, 1071 (9th Cir. 2016)).

63. Accordingly, under Tenth Circuit precedent, to establish a deliberate indifference claim, detainees must show the detention center 1) had actual knowledge of an obvious medical need; and 2) consciously disregarded the risks posed by that knowledge (akin to "criminal recklessness"). *Blackmon*, 734 F.3d at 1244.

64. Under the alternative standard espoused by the Second, Sixth, Seventh, and Ninth Circuits, a plaintiff must only show "reckless disregard." *Brawner,* 14 F.4th 585, 593 (6th Cir. 2021).

65. The Prison Litigation Reform Act ("PLRA") requires deliberate indifference plaintiffs to complete the PLRA's administrative exhaustion requirements before filing federal suit. *Snyder v. Harris*, 406 F. App'x 313, 315 (10th Cir. 2011). However, the PLRA does not apply to plaintiffs who have been released from confinement prior to filing an action. *Doe v. Bally*, No. 05-1346-WEB, 2008 U.S. Dist. LEXIS 141643, at *7 (D. Kan. Apr. 22, 2008).

## V.      CLAIMS AND CAUSES OF ACTION

### A.  FIRST CLAIM FOR RELIEF: 42 U.S.C. § 1983 – Deliberate Indifference to a Known Medical Need in Violation of the Fourteenth Amendment – against Defendants Lemuz and Pennington individually and in their official capacities.

66. Plaintiff realleges all other paragraphs as if fully set forth herein.

67. The named Defendants are persons for purposes of 42 U.S.C. § 1983.

68. At all times relevant to this action, the named Defendants acted under color of state law in their capacity as employees and agents of Mount View.

69. At the time of the complained of events, the Plaintiff had a clearly established Fourteenth Amendment Right to be free from deliberate indifference to a known medical need.

70. Any reasonable person in the named Defendants' position knew or should have known of their duty to protect Plaintiff during his period of confinement.

71. Any reasonable person in the named Defendants' position knew or should have known of their duty to protect Plaintiff from harmful or lethal substances during his period of confinement.

72. Within the Tenth Circuit, "by 1997 it was clear enough that pretrial detainees enjoyed a variety of rights — including the right to be free from punishment and deliberate indifference to their serious medical needs." *Blackmon*, 734 F.3d, at 1246.

73. Furthermore, "[b]y 1997, it was beyond debate that a pretrial detainee enjoys *at least* the same constitutional protections as a convicted criminal. *Id*., at 1240-41.

74. Accordingly, in the Tenth Circuit, a juvenile detainee may establish a deliberate indifference claim against a juvenile detention center by establishing that the detention center 1) had actual knowledge of an obvious medical need; and 2) consciously disregarded the risks posed by that knowledge (akin to "criminal recklessness"). *Blackmon*, 734 F.3d at 1244.

75. A detainee "may satisfy the subjective component of the deliberate indifference test is to show that a 'gate keeping' prison official 'den[ied] or delay[ed] [him] access to medical care' in conscious disregard of a substantial risk of serious harm. *Ibid.* (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

76. "The denial of meaningful access to care and the delay in doing so [is] . . . enough to suggest conscious disregard of a substantial risk of serious harm." *Id.,* at, 1245-46 (cleaned up).

77. Plaintiff has a clearly established right to be free from deliberate indifference under the Fourteenth Amendment. *Accord*, *id.*

78. The Defendants obtained actual knowledge of Plaintiff's mental health status, including his CPTSD, anxiety, depression, addiction, and suicidal ideation no later than January 2021.

79. The Defendants obtained specific knowledge of Plaintiff's worsened suicidal ideation, suicide plan, and specific intent to kill himself on or about September 1, 2022, but at least two weeks prior to his suicide attempt.

80. Defendants, as mental health and other supervisory employees, and the detention center itself, had a duty to protect, or—at the least—not remain deliberately indifferent, to Plaintiff's health and wellbeing. *Accord, id.*

81. Defendant Pennington deliberately ignored Plaintiff's report of worsening suicidal ideation and his stated plan and intent to kill himself.

82. Defendants failed to ensure that Plaintiff consumed his medications throughout September 2022.

83. Defendants failed to supervise Plaintiff throughout September 2022.

84. Defendants failed to supervise, search, or otherwise prevent Plaintiff from gaining access to lethal contraband throughout September 2022 despite full and actual knowledge of his plan and intent to kill himself.

85. Defendants failed to conduct any searches or other means of preventing Plaintiff from stockpiling lethal contraband in his cell.

86. Defendants failed to supervise Plaintiff while he conducted his work duties on or about September 15, 2022, leaving him unattended in a kitchen with multiple lethal substances.

87. Defendants failed to search or otherwise deter Plaintiff, in any way, from collecting major dosages of almond extract and transporting it to his cell.

88. Defendants failed to supervise or otherwise intervene on or about September 15, 2022, despite Plaintiff's obvious intoxication.

89. Defendants failed to intervene despite Plaintiff's obvious incapacitation when he lost consciousness on or about September 15, 2022.

90. Defendants, as supervisory employees, failed to ensure *any* of their employees acted to prevent Plaintiff's suicide attempt or to intervene following his attempt.

91. Defendants delayed emergency medical treatment for Plaintiff once his condition was reported to Jefferson County Fire Department.

92. The actions and omissions of the named Defendants were the legal and proximate cause of Plaintiff's damages.

93. As a proximate cause and result of the named Defendants' conduct, the Plaintiff suffered actual physical bodily and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, excruciating pain, and severe emotional distress.

94. The Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgement interest and costs as allowable by federal law.

95. As a direct and proximate result of the acts, omissions, and violations alleged above, the Plaintiff suffered damages, injuries, pain and suffering, emotional distress, impairment of quality of life, reasonable and necessary medical and other expenses.

96. In addition, Plaintiff is entitled to punitive damages against the named Defendants, in that their actions were taken maliciously, willfully, or with a reckless or wanton disregard of the constitutional rights of the Plaintiff.

**B. SECOND CLAIM FOR RELIEF: 42 U.S.C. § 1983 – Deliberate Indifference to a Known Medical Need in Violation of the Eighth Amendment – against Defendants Lemuz and Pennington, individually and in their official capacities.**

97. Plaintiff realleges all other paragraphs as if fully set forth herein.

98. The named Defendants are persons for purposes of 42 U.S.C. § 1983.

99. At all times relevant to this action, the named Defendants acted under color of state law in their capacity as employees and agents of Mount View.

100.     At the time of the complained of events, the Plaintiff had a clearly established Eighth Amendment Right to be free from deliberate indifference to a known medical need. *See Ramos*, 639 F.2d at 574 (10th Cir. 1980) (noting the state "has a constitutional obligation 'to provide medical care for those whom it is punishing by incarceration.'") (quoting *Estelle*, 429 U.S. at 97)).

101.     Plaintiff's clearly established right "includes medical treatment for inmates' physical ills, . . . and psychological or psychiatric care . . ." *Ibid.*

102.     Where the state is "'deliberate[ly] indifferen[t] to serious medical needs' of prisoners [it] violates the Eighth Amendment." *Id.* at 575 (quoting *Estelle*, 429 U.S. at 106)).

103.     Any reasonable person in the named Defendants' position knew or should have known of their duty to protect Plaintiff during his period of confinement.

104.     Any reasonable person in the named Defendants' position knew or should have known of their duty to protect Plaintiff from harmful or lethal substances during his period of confinement.

105.     To establish an Eighth Amendment claim for deliberate indifference, a detainee must show "'deliberate indifference on the part of prison officials and . . . [that] the prisoner's medical needs [were] serious.'" *Ibid.* (quoting *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978)).

106.     "A medical need is serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.,* at 575 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)).

107.    "The denial of meaningful access to care and the delay in doing so [is] . . . enough to suggest conscious disregard of a substantial risk of serious harm." *Id.,* at, 1245-46 (cleaned up).

108.    The Defendants obtained actual knowledge of Plaintiff's mental health status, including his CPTSD, anxiety, depression, addiction, and suicidal ideation no later than January 2021.

109.    The Defendants obtained specific knowledge of Plaintiff's worsened suicidal ideation, suicide plan, and specific intent to kill himself on or about September 1, 2022, but at least two weeks prior to his suicide attempt.

*110.*    Defendants, as mental health and other supervisory employees, and the detention center itself, had a duty to protect, or—at the least—not remain deliberately indifferent, to Plaintiff's health and wellbeing. *Accord, id.*

111.    Defendant Pennington deliberately ignored Plaintiff's report of worsening suicidal ideation and his stated plan and intent to kill himself.

112.    Defendants failed to ensure that Plaintiff consumed his medications throughout September 2022.

113.    Defendants failed to supervise Plaintiff throughout September 2022.

114.    Defendants failed to supervise, search, or otherwise prevent Plaintiff from gaining access to lethal contraband throughout September 2022 despite full and actual knowledge of his plan and intent to kill himself.

115.    Defendants failed to conduct any searches or other means of preventing Plaintiff from stockpiling lethal contraband in his cell.

116.     Defendants failed to supervise Plaintiff while he conducted his work duties on or about September 15, 2022, leaving him unattended in a kitchen with multiple lethal substances.

117.     Defendants failed to search or otherwise deter Plaintiff, in any way, from collecting major dosages of almond extract and transporting it to his cell.

118.     Defendants failed to supervise or otherwise intervene on or about September 15, 2022, despite Plaintiff's obvious intoxication.

119.     Defendants failed to intervene despite Plaintiff's obvious incapacitation when he lost consciousness on or about September 15, 2022.

120.     Defendants, as supervisory employees, failed to ensure *any* of their employees acted to prevent Plaintiff's suicide attempt or to intervene following his attempt.

121.     Defendants delayed emergency medical treatment for Plaintiff once his condition was reported to Jefferson County Fire Department.

122.     The actions and omissions of the named Defendants were the legal and proximate cause of Plaintiff's damages.

123.     As a proximate cause and result of the named Defendants' conduct, the Plaintiff suffered actual physical bodily and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, excruciating pain, and severe emotional distress.

124.     The Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgement interest and costs as allowable by federal law.

125.    As a direct and proximate result of the acts, omissions, and violations alleged

above, the Plaintiff suffered damages, injuries, pain and suffering, emotional distress,

impairment of quality of life, reasonable and necessary medical and other expenses.

126.    In addition, Plaintiff is entitled to punitive damages against the named

Defendants, in that their actions were taken maliciously, willfully, or with a reckless or

wanton disregard of the constitutional rights of the Plaintiff.

###    C.  THIRD CLAIM FOR RELIEF: 42 U.S.C. § 1983 – Deliberate Indifference to a Known Medical Need in Violation of the Fourteenth Amendment – against Defendants Department of Youth Services and Mount View

127.    Plaintiff realleges all other paragraphs as if fully set forth herein.

128.    The named Defendants are persons for purposes of 42 U.S.C. § 1983.

129.    At the time of the complained of events, the Plaintiff had a clearly established

Fourteenth Amendment Right to be free from deliberate indifference to a known medical

need.

130.    A municipality may be held liable where the municipality itself . . . generated the

'moving force' behind the alleged constitutional violation, either through official policy

or widespread and pervasive custom." *Estate of Beauford v. Mesa Cnty.*, 35 F.4th 1248,

1275 (10th Cir. 2022) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388-89 (1989)).

131.    "To prove municipal liability under § 1983, the plaintiff must show: (1) a

municipality enacted or maintained a policy, (2) the municipality was deliberately

indifferent to the resulting constitutional violations, and (3) the policy caused the

underlying constitutional violation." *Arnold v. City of Olathe*, 35 F.4th 778, 795 (10th

Cir. 2022) (citing *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 769 (10th Cir. 2013)).

132.    "A court may find that the challenged practice is an official policy or custom for municipal liability purposes if 'it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or a deliberately indifferent training or supervision.'" *Ibid.* (quoting *Schneider,* 717 F.3d at 770).

133.    Notice of a constitutional violation "can be established by proving the existence of a pattern of constitutional violations or, in a narrow range of circumstances, if a 'violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.'" *Ibid.* (quoting *Schneider,* 717 F.3d at 770).

134.    As stated by Defendant Lemuz, Mount View administration identified "many, many breakdowns that led to [Plaintiff's] serious incident."

135.    These failures were due to deliberate indifference in training and supervision that affected all levels of Mount View staff, from the "dining services to the staff working the pod to the staff in charge of monitoring the visit" to fail to prevent or deter Plaintiff's suicide attempt and to fail to supervise him or intervene during the attempt.

136.    These failures directly caused Mount View employees to fail to deter or prevent Plaintiff's suicide attempt and caused them to fail to supervise him throughout the days and weeks leading up to the event and during the event itself. These failures also caused Mount View employees to fail to intervene promptly once Plaintiff attempted suicide. The employees' failures to intervene "den[ied] or delay[ed] [Plaintiff's] access to medical care' in conscious disregard of a substantial risk of serious harm. *Blackmon*, 734 F.3d at 1244 (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

137.     As a direct and proximate result of Mount View's failure to adequately train and supervise its employees, Plaintiff was deprived of his Constitutional rights and suffered extreme pain and mental and emotional suffering.

138.     Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), pre-judgment interest, and costs as allowable by federal law.

139.     Plaintiff is also entitled to punitive damages against Defendants pursuant to 42 U.S.C. § 1983 as Defendants acted maliciously, willfully, or with a reckless and wanton disregard for Plaintiff's Constitutional rights.

### D.  FOURTH CLAIM FOR RELIEF: 42 U.S.C. § 1983 – Deliberate Indifference to a Known Medical Need in Violation of the Eighth Amendment – against Defendant Department of Youth Services and Mount View

140.     Plaintiff realleges all other paragraphs as if fully set forth herein.

141.     The named Defendants are persons for purposes of 42 U.S.C. § 1983.

142.     At the time of the complained of events, the Plaintiff had a clearly established Eighth Amendment Right to be free from deliberate indifference to a known medical need.

143.     A municipality may be held liable where the municipality itself . . . generated the 'moving force' behind the alleged constitutional violation, either through official policy or widespread and pervasive custom." *Estate of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1275 (10th Cir. 2022) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388-89 (1989)).

144.     "To prove municipal liability under § 1983, the plaintiff must show: (1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation." *Arnold v. City of Olathe*, 35 F.4th 778, 795 (10th

Cir. 2022) (citing *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 769 (10th Cir. 2013)).

145.    "A court may find that the challenged practice is an official policy or custom for municipal liability purposes if 'it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or a deliberately indifferent training or supervision.'" *Ibid.* (quoting *Schneider,* 717 F.3d at 770).

146.    Notice of a constitutional violation "can be established by proving the existence of a pattern of constitutional violations or, in a narrow range of circumstances, if a 'violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.'" *Ibid.* (quoting *Schneider,* 717 F.3d at 770).

147.    As stated by Defendant Lemuz, Mount View administration identified "many, many breakdowns that led to [Plaintiff's] serious incident."

148.    These failures were due to deliberate indifference in training and supervision that affected all levels of Mount View staff, from the "dining services to the staff working the pod to the staff in charge of monitoring the visit" to fail to prevent or deter Plaintiff's suicide attempt and to fail to supervise him or intervene during the attempt.

149.    These failures directly caused Mount View employees to fail to deter or prevent Plaintiff's suicide attempt and caused them to fail to supervise him throughout the days and weeks leading up to the event and during the event itself. These failures also caused Mount View employees to fail to intervene promptly once Plaintiff attempted suicide. The employees' failures to intervene "den[ied] or delay[ed] [Plaintiff's] access to medical care' in conscious disregard of a substantial risk of serious harm. *Blackmon*, 734 F.3d at 1244 (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

150.     As a direct and proximate result of Mount View's failure to adequately train and
supervise its employees, Plaintiff was deprived of his Constitutional rights and suffered
extreme pain and mental and emotional suffering.

151.     Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b),
pre-judgment interest, and costs as allowable by federal law.

152.     Plaintiff is also entitled to punitive damages against Defendants pursuant to 42
U.S.C. § 1983 as Defendants acted maliciously, willfully, or with a reckless and wanton
disregard for Plaintiff's Constitutional rights.

## VI.     DAMAGES

153.     The     Defendants' deliberately indifferent conduct alleged hereinabove has
caused the Plaintiff the following damages:

    a.  Serious and severe physical injury, pain and suffering, mental and emotional
anguish, emotional upset, stress, anxiety, CPTSD, and depression in amounts to
be established at trial;

    b.  Economic damages in out-of-pocket expenses, litigation costs, attorneys' fees,
and medical bills in amounts to be established at trial.

154.     Defendants' violations of the Eighth and Fourteenth Amendments were willful,
entitling the Plaintiff to an award of punitive damages to the fullest extent permitted by
law.

## VII.     REQUEST FOR RELIEF

155.     The Plaintiff requests that the Court enter judgement in his favor and against the
Defendants as follows:

a.   Awarding the Plaintiff special damages for out-of-pocket expenses in amounts to be established at trial;

b.   Awarding the Plaintiff general damages for physical suffering and emotional distress in an amount to be established at trial;

c.   Punitive damages, pursuant to 42 U.S.C. § 1981, 2000(e), in the maximum amount permitted by law;

d.   Awarding the Plaintiff statutory and reasonable attorneys' fees, litigation expenses, and costs incurred in this action;

e.   Awarding the Plaintiff pre-judgment interest; and

f.   Awarding the Plaintiff any additional and further relief that the Court finds equitable, appropriate, or just.

---

### *PLAINTIFF REQUESTS A JURY ON ALL ISSUES SO TRIABLE*

---

*/s/ Igor Raykin*
Igor Raykin, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846
E-mail: igor@coloradolawteam.com

*/s/ Conor O'Donnell*
Conor O'Donnell, Esq. Atty. Reg. # 58077
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Ste. 150
Aurora, CO 80014
Phone: 720-588-9713
E-mail: conor@coloradolawteam.com